IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

BAMBI MATTILA,

                Plaintiff,

      vs.

NORTHWESTERN COMPANY, dba
NORTHWESTERN ENERGY

                Defendant.

CV 23-79-BU-SPW

ORDER ON MOTION TO
STRIKE SUMMARY
JUDGMENT EVIDENCE

On February 7, 2025, NorthWestern Energy ("NorthWestern") filed a motion for summary judgment. (Doc. 35). On March 3, 2025, Bambi Mattila ("Mattila") filed a motion to strike NorthWestern's summary judgment evidence. (Doc. 47). Mattila moves to strike five affidavits in support of NorthWestern's motion because they were submitted by previously undisclosed witnesses. (Doc. 48 at 8). In addition, Mattila moved to strike the affidavits of two previously disclosed witnesses because the statements in their affidavits lack a proper foundation, contain inadmissible hearsay, and are comprised of conclusory statements. (*Id.*). NorthWestern filed a response on March 14, 2025. (Doc. 50).

The motion to strike has been fully briefed and is ripe for review. (*See* Docs. 48 and 50). For the following reasons, the Court grants in part and denies in part Mattila's motion.

## I.    Background

Bambi Mattila began working as a Real Time Scheduler for NorthWestern Energy in 2008. (Doc. 4 at ¶¶ 8–9). As a Real Time Scheduler, Mattila's role primarily involved trading energy in the hourly market. (*Id.* at ¶ 10). Throughout 2022, Mattila began to believe that male employees in similarly situated roles were receiving a higher salary, given larger raises, and receiving additional training. (*Id.* at ¶¶ 22–26). Based on this belief, Mattila filed a Charge of Discrimination with the Montana Human Rights Bureau ("MHRB") and the federal Equal Employment Opportunity Commission ("EEOC") on January 10, 2023. (*Id.* at ¶ 28). On August 7, 2023, the MHRB concluded their investigation, finding no reasonable cause to believe unlawful discrimination occurred as alleged in Mattila's complaint. (Doc. 50-1 at 7). On the same day, the EEOC adopted the findings of the MHRB and did not determine the merits of Mattila's claims. (Doc. 37-9). The EEOC issued a Notice of Right to Sue letter to Mattila. (*Id.*).

Mattila now alleges claims under the Equal Pay Act (Count I) and claims based on discrimination under Title VII (Counts II and V). (Doc. 4; Doc. 30). Mattila alleges that her salary and advancement have been artificially stifled to

allow less experienced male employees to "catch up" to her higher salary. (Doc. 42 at 2). Mattila claims that NorthWestern intentionally gave male employees better training and assignment opportunities so that males would advance more quickly in the company and receive higher pay raises. (Doc. 42 at 2.)

Discovery in this matter ended on January 31, 2025. (*See* Doc. 29). Following the close of discovery, NorthWestern filed a motion for summary judgment and brief in support. (Docs. 35, 36.) As part of NorthWestern's motion for summary judgment, it submitted five affidavits from previously undisclosed witnesses: Doug Peoples, Lisa Barkell, Alex Murphy, Chris Benski, and Robert Stagnoli. (Docs. 37-1; 37-2; 37-4; 37-5; 37-6). NorthWestern also submitted affidavits from two previously disclosed witnesses, Jeremy Clemens and Chris Forbeck. (Docs. 37-2; 37-3).

## II.    Discussion

In response to NorthWestern's motion for summary judgment, Mattila filed a motion to strike its summary judgment evidence. (Doc. 47). Mattila argues that under Federal Rules of Civil Procedure 26 and 37, NorthWestern should be precluded from using the affidavits of the untimely disclosed witnesses. (Doc. 48 at 14). In addition, Mattila contends that the affidavits of Clemens and Forbeck should be excluded from consideration because they contain inadmissible hearsay,

conclusory statements, and evidence that lacks foundation or personal knowledge of either affiant. (Doc. 47 at 20, 25).

The Court will first evaluate whether the affidavits of the five previously undisclosed witnesses violated the timing requirements of Rule 26 and if they should be excluded under Rule 37. Then the Court will determine whether the affidavits of the timely disclosed witnesses, Clemens and Forbeck, should be excluded.

A.    *Late Disclosed Witness Affidavits*

NorthWestern's motion for summary judgment partially relies on affidavits from five previously undisclosed witnesses: Doug Peoples, Lisa Barkell, Alex Murphy, Chris Benski, and Robert Stagnoli. (Doc. 48 at 8). Mattila argues that NorthWestern had a duty to disclose these fact witnesses under Rule 26 and in response to Mattila's discovery requests. (Doc. 48 at 9). Mattila contends that under Rule 37, the late disclosure requires striking any evidence the previously undisclosed witnesses provided. (*Id.* at 15). In response, NorthWestern argues that sanctions are inappropriate because the affidavits were provided by fact witnesses who were fully known to Mattila and disclosed by her as individuals with relevant discoverable information. (Doc. 50 at 6–7).

Rule 26 requires parties to disclose the names of individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1). "If a party fails to provide information or identify

4

a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) Rule 26(e) requires parties to supplement their disclosures in a "timely manner," but that phrase is not defined in the rule and depends on the facts and circumstances of the case. *Markson v. CRST Int'l, Inc.*, 2021 WL 5969519 at *1 (C.D. Cal. Nov. 23, 2021). Supplemental disclosures served after the close of discovery are presumptively untimely. *Wong v. Regents Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005). Witness disclosures must be made sufficiently before the close of discovery for the party-opponent to have a reasonable opportunity to pursue discovery of these witnesses. *Id.*

When a party fails to timely supplement their disclosures, a court may impose sanctions under Rule 37 by evaluating the following factors: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

Discovery in this matter closed on January 31, 2025. (Doc. 29 at 2). The affidavits of the five previously undisclosed witnesses were not provided until February 7, 2025, as support for NorthWestern's motion for summary judgment. (*See* Doc. 37). Because the disclosures were made after the end of discovery, they are untimely.

However, Rule 37 sanctions are unnecessary because the late disclosures were harmless. As NorthWestern demonstrates in their response, Mattila knew these individuals had discoverable information relevant to her claims based on her discovery responses. In her response to NorthWestern's interrogatories, Mattila stated that Lisa Barkell can "testify she received lower annual raises than the males in energy supply [and] [c]an also testify to favoritism to male employees of energy supply." (Doc. 50-1 at 45–46). She also responded that Doug Peoples was one of the individuals in charge of determining raises for employees. (Doc. 50-1 at 45–46). In other responses to the interrogatories, Mattila identified Alex Murphy as an individual who received additional Energy Imbalance Market (EIM) training not offered to her and was subsequently given an EIM analyst position. (*Id.* at 51, 53). Further, Mattila stated that Chris Benski had been promised a position within the company, and she did not apply for the position because they had already offered the role to Benski. (*Id.* at 53–54). Last, Mattila identified Robert Stagnoli as an

individual who received additional training not offered to her and, as a result, was given a promotion. (*Id.* at 53).

Because Mattila identified the previously undisclosed witnesses in her own discovery responses as individuals with discoverable information relevant to her claims, she cannot now claim that she is prejudiced or surprised by NorthWestern's use of these witnesses in their motion for summary judgment. Therefore, the Court denies Mattila's motion to strike these affidavits.

B.    *Affidavits of Jeremy Clemens and Chris Forbeck*

Mattila moves to strike the affidavits of Jeremy Clemens and Chris Forbeck attached to NorthWestern's motion for summary judgment. (Doc. 48 at 20, 25). Mattila contends that the affidavits lack foundation, are outside the scope of the witness's designation, contain inadmissible hearsay, and state improper legal conclusions. (*Id.* at 20–28). Given the breadth of Mattila's objections to Clemens's and Forbeck's affidavits, the Court will consider each category of objection in turn.

A trial court may consider only admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(4); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). Rule 56(c)(4) requires that affidavits be made on personal knowledge, set out facts that would be admissible in evidence, and that the affiant be competent to testify to the matters stated. Fed. R. Civ. P. 56(c)(4). A declarant's mere assertions that he or she possesses personal knowledge and competency to

testify are not sufficient. *Barthelemey v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990). A declarant must show knowledge and competency affirmatively, under Rule 56(c)(4), for example by "the nature of the declarant's position and nature of participation in the matter." *Id.* at 1018.

### 1. *Clemens Affidavit*

In NorthWestern's initial disclosure, it disclosed that Clemens, the Human Resources Manager for NorthWestern, may have information regarding Mattila's claims. (Doc. 41-2 at 2). In its response to Mattila's Interrogatory No. 6, it specified that "Clemens may testify about NorthWestern's new hire offer process and explain the data demonstrating employee compensation among other employees within Mattila's work group." (Doc. 48-3 at 8). Clemens submitted an affidavit in support of NorthWestern's motion for summary judgment. (*See* Doc. 37-2)

### a. *Foundation*

Mattila objects to paragraphs 5, 6, 8, 15–17, 28, 31, and 42 of Clemens's affidavit, arguing Clemens has not established the proper foundation to testify to these statements under Federal Rules of Evidence 601 and 602. (Doc. 48 at 20–23). These paragraphs concern NorthWestern's EEOC and Code of Conduct policies, the hiring practices and considerations given to NorthWestern applicants, the basis of

Mattila's complaint, Mattila's annual performance ratings, and the responsibilities of other NorthWestern employees. (*See* Doc. 37-2).

Under Rules 601 and 602, a declarant may only testify if evidence is introduced that is sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 601, 602. Personal knowledge can be inferred from a declarant's position within a company or business. *Edwards v. Toys "R" Us*, 572 F.Supp. 2d 1197, 1201 (C.D. Cal. Nov. 5, 2007); *Barthelemey*, 897 F.2d at 1018.

Clemens is the Manager of Human Resources for NorthWestern. (Doc. 50-1 at 21). As an HR manager for NorthWestern, the Court presumes that Clemens would have personal knowledge regarding relevant employee policies, employee hiring practices, employee performance ratings, and the duties assigned to employees. *See Barthelemey*, 897 F.2d at 1018 (concluding that a CEO's personal knowledge of various corporate activities could be presumed).

Mattila next objects to paragraphs 20–24, 29, 32–34, and 41 of Clemens' affidavit. Mattila argues that the information in these paragraphs lacks a proper foundation because it is based on spreadsheets created for the affidavit not disclosed in discovery. (Doc. 48 at 20–23). These paragraphs concern Mattila's salary compensation compared to other individuals within her work group. In response,

9

NorthWestern argues that the underlying data the spreadsheets were based on was produced in discovery and, therefore, has a proper foundation. (Doc. 50 at 26).

Personal knowledge can also be established through the review of relevant files and records. A declarant may testify about acts they did not personally observe if those acts are described in the records they reviewed. *Washington Cent. R. Co., Inc. v. National Mediation Bd.*, 830 F. Supp. 1343. (E.D. Wash 1993); *see also Vote v. United States*, 753 F. Supp. 866, 868 (D. Nev. 1990), *aff'd* 930 F.3d 31 (9th Cir. 1991).

Clemens worked with the NorthWestern payroll department to gather the relevant compensation records for each employee in the work group involving Mattila. (Doc. 37-2 at ¶ 20). After gathering the figures, he created several spreadsheets for use in his affidavit. (*Id.*). While NorthWestern did not provide the actual spreadsheets to Mattila in discovery, NorthWestern provided the underlying data used to create the spreadsheets to Mattila before the close of discovery. (Doc. 50-1 at 28–29). Therefore, the data was disclosed in discovery, and Clemens's statements that relied on the spreadsheets are admissible.

Mattila also moves to strike paragraphs 15-17 of Clemens's disclosure because the statements were based on Tom Michelotti's resume, which was not disclosed in discovery. (Doc. 48 at 22). NorthWestern argues that his resume was provided to the investigator in the underlying MHRB proceedings and was

presumably given to Mattila. (Doc. 50 at 25). The MHRB investigator in the underlying proceeding concluded that NorthWestern did not discriminate against Mattila by hiring Tom Michelotti, because he had more relevant experience, which included 21 years of studying NorthWestern's transmission system and expertise in the EIM market. (Doc. 50-1 at 9, 11). These are the same facts that Clemens reiterated in his affidavit. (*See* Doc. 37-2 at ¶¶ 12–15). Because Mattila initiated the underlying MHRB proceeding, she would have access to the MHRB's conclusions, including the analysis of Michelotti's resume. Therefore, Michelotti's resume was disclosed and Clemens's statements referencing the resume are admissible.

In conclusion, Clemens has demonstrated through his employment position and the attached documents he reviewed that he had a proper foundation for all the statements in his affidavit.

### b. *Outside the Scope*

Mattila next argues that some of Clemens's statements are outside the scope of his witness designation including: (1) the EEOC policy and NorthWestern's Code of Conduct (Doc. 37-2 at ¶¶ 5-6); (2) the resume and qualifications of Tom Michelotti (*Id.* at ¶¶ 12–13 and 15–16); (3) references to the departmental allocation of money (*Id.* at ¶ 30); (4) references to NorthWestern's employee performance ratings (*Id.* at ¶ 31); and (5) statements regarding Lisa Barkell Snyder's job

designations (*Id.* at ¶¶ 42, 43. (Doc. 48 at 24). In response, NorthWestern argues that Clemens's affidavit aligns with his designation. NorthWestern disclosed that Clemens was knowledgeable about the annual pay and incentive process related to Mattila, and much of Clemens's affidavit addressed these issues. (Doc. 50 at 27).

In their response to Mattila's Interrogatory No. 6, NorthWestern specified that "Clemens may testify about NorthWestern's new hire offer process and explain the data demonstrating employee compensation among other employees within Mattila's work group." (Doc. 48-3 at 8). In reviewing Clemens's affidavit, the Court finds that his statements all fall within his broad designation as a potential witness. Therefore, the Court finds that his affidavit is within the scope of his designated testimony.

### c.  Conclusory Statements

Mattila next argues that paragraphs 8, 16, 17, 42, and 43 should be stricken because they are mere conclusory statements. (Doc. 48 at 25). NorthWestern did not respond to this argument. (*See* Doc. 50).

"Conclusory self-serving affidavit[s], lacking detailed facts and any supporting evidence are insufficient to create a genuine issue of material fact." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012) (quoting *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)).

In paragraph 8 of his affidavit Clemens states that,

> There is no preference given in hiring, compensating or promoting employees who are from or live in Butte. There is no preference given to employees who attended Butte Central Catholic High School although many of our employees are alumnus from that school. There is no preference given to individuals who played football in their past. There is no preference given in hiring, compensating or promoting male employees over female employees.

(Doc. 37-2 at ¶ 8). The Court agrees with Mattila that this paragraph contains numerous conclusory statements without evidence presented to support these claims. Clemens's conclusion that NorthWestern does not prefer hiring employees from Butte, Butte Central Catholic High School, former football players, or male employees lacks any supporting evidence or facts. Therefore, this Court will strike paragraph 8 when evaluating NorthWestern's motion for summary judgment.

In paragraphs 16 and 17 of his affidavit, Clemens concluded that Michelotti's skill set exceeded the basic requirements for the position of Real Time Scheduler. As a result of his experience, he was compensated at a higher level than other Real Time Schedulers. (Doc. 37-2 at ¶¶16–17). Clemens based his conclusion on facts and evidence in his affidavit. Based on Michelotti's resume, Clemens found that he had 21 years of experience working with NorthWestern's transmission system and had experience in EIM, which was a valuable asset for Northwestern's needs. (*Id.* at ¶¶ 14, 15). Based on his experience, Clemens concluded that a higher salary for Michelotti was appropriate. This is a proper conclusion supported by evidence in the record.

13

In paragraph 42 of his affidavit Clemens states that, "Lisa Barkell-Snyder was never employed as a Real Time Scheduler with NorthWestern, so her job duties are not the same as ... Mattila and so she should not be compared to other Real Time Schedulers based on Mattila's deposition testimony." (Doc. 37-2 at ¶ 42). This is a proper conclusion supported by the fact that Barkell and Mattila occupied different roles within the company.

In paragraph 43 of Clemens' affidavit, he states, "Barkell has no direct knowledge whether she is being paid more, less or the same as other male employees ... She does not believe that NorthWestern is paying her differently because she is a female." (*Id.* at ¶ 43). Clemens cites Barkell's affidavit to support this statement. (*Id.* at 89–90). Here, Clemens's statements are not conclusory; instead, he is reiterating the statements made by Barkell in her affidavit.

### d. *Inadmissible Hearsay*

Last, Mattila argues that paragraphs 27 and 43 should be stricken because they constitute inadmissible hearsay. (Doc. 48 at 25). NorthWestern did not respond to this argument. (*See* Doc. 50).

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). A statement that qualifies as hearsay is "not admissible except as provided by these rules or by other rules prescribed by the

Supreme Court. Hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony, i.e. in a form that would be admissible at trial." *Medina v. Multaler, Inc.*, 547 F. Supp. 2d 1099, 1122 (C.D. Cal. Feb. 7, 2007) (quoting *Williams v. Borough of W. Chester*, 891 F.2d 458, 465 n. 12 (3d Cir. 1989)).

Paragraph 27 of Clemens's affidavit references the conclusions of the underlying MHRB investigation. Clemens states, "the Investigator of the Montana Human Rights Bureau found that Davis was paid less than Mattila." (Doc. 37-2 at ¶ 27). The Ninth Circuit has held that "prior administrative findings made with respect to an employment discrimination claim, may, of course, be admitted as evidence at a federal-sector trial de novo." *Bradshaw v. Zoological Co. of San Diego*, 569 F.2d 1066, 1069 (9th Cir. 1978) (quoting *Chandler v. Roudebush*, 425 U.S. 840, 863 (1976) (citing Fed. Rule Evid. 803(8)(c))). Here, the evidence is admissible hearsay and paragraph 27 will not be stricken from Clemens's affidavit.

Paragraph 43 of Clemens's affidavit references Barkell's statements regarding her employment and pay. (Doc. 37-2 at ¶ 43). Here, Barkell as the out-of-court declarant could present this as direct testimony at trial. Therefore, whether the statement in Clemens's affidavit is hearsay is irrelevant and paragraph 43 will not be stricken from Clemens's affidavit.

In conclusion, the Court will not consider paragraph 8 of Clemens affidavit in evaluating NorthWestern's motion for summary judgment. The remaining paragraphs will not be stricken.

### 2. Forbeck's Affidavit

Forbeck is the Director of Compensation and Benefits at Northwestern and was identified as a potential witness in NorthWestern's discovery responses. (Doc. 41-3 at 8). According to NorthWestern, Forbeck has knowledge and experience in designing comprehensive reward systems to attract top candidates for employment and has knowledge and experience regarding NorthWestern's compensation structure. (*Id.*).

### a. Foundation

Mattila objects to paragraphs 9–12 and 14–16 of Forbeck's affidavit as lacking a proper foundation. (Doc. 48 at 26–28). These paragraphs concern the compensation policies of NorthWestern and the basis of Mattila's salary compared to other Real Time Schedulers.

Mattila argues that paragraphs 9–12, and 14–16 should be stricken because Forbeck has not established a proper foundation under Rules 601 and 602. (*Id.*). Paragraphs 9–10 discuss the use of consulting firms to analyze NorthWestern's compensation structure and NorthWestern's annual pay administration process, paragraphs 11–12 discuss Mattila's salary and yearly

incentives in comparison to another employee (Chris Mannix), and paragraphs 14–16 discuss the performance factors and budgetary considerations that determine employee compensation at NorthWestern. (Doc. 37-3 at ¶¶ 9–12 and 14–16).

As discussed above, under Rules 601 and 602, a declarant may only testify if evidence is introduced to support a finding that the witness has personal knowledge and such knowledge can be inferred from a declarant's position within a company or business. *See Edwards*, 572 F.Supp. 2d at 1201. Forbeck is the Director of Compensation and Benefits at NorthWestern. It can be presumed that he has personal knowledge regarding the process of determining salary compensation, the actual salaries of employees, and the factors that influence compensation.

Mattila next argues that paragraphs 14–16 lack proper foundation under Rule 401 and 402. Rule 402 provides that "[a]ll relevant evidence is admissible except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402. "[O]bjections to evidence … [as] irrelevant, speculative, and or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself." *Wisdom v. Centerville Fire Dist. Inc.*, 2008 WL 11349683 at * 2 (D. Idaho Aug. 21, 2008) (quoting *Harris Tech Sales, Inc v. Eagle Test Systems, Inc.*, 2008 WL 343260 at * 3 (D. Ariz. 2008)). "A court can award summary

17

judgment only when there is no genuine dispute of material fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant." *Harris Tech Sales, Inc.*, 2008 WL 343260 at *3. The Court will only consider evidence on summary judgment if it would create a genuine issue of material fact, which would make it a fact of consequence and thus, relevant. If the evidence does not create a genuine dispute of material fact, there is no need to separately determine relevancy because the Court will not consider such evidence on summary judgment.

Thus, Forbeck has established he has the proper foundation for paragraphs 9–12 and 14–16 based on his personal knowledge and position within NorthWestern.

### b. *Outside the Scope*

Mattila next argues that paragraphs 12, and 14–16 are outside the scope of Forbeck's witness designation. According to NorthWestern, Forbeck has knowledge and experience in designing comprehensive reward systems to attract top candidates for employment and has knowledge and experience regarding NorthWestern's compensation structure. (Doc. 41-3 at 8). These paragraphs discuss Mattila's salary compensation compared to other employees and the factors determining compensation at NorthWestern. These statements all fall within the scope of Forbeck's designation.

### c. *Conclusory Statements*

Mattila argues that paragraphs 12–16 are mere conclusory statements that should be stricken from consideration. "Conclusory self-serving affidavit[s], lacking detailed facts and any supporting evidence are insufficient to create a genuine issue of material fact." *Hexcel Corp.*, 681 F.3d at 1063 (quoting *FTC*, 104 F.3d at 1171.

Paragraphs 12–13 of Forbeck's affidavit discuss Mattila's salary compared to another employee and explains the factors that caused the other employee to have a higher salary. (Doc. 37-3 at ¶¶ 12–13). These are not mere conclusory statements because they are based on NorthWestern's policies that determine its employees' salaries.

Paragraphs 14–16 discuss the factors that influence NorthWestern's employee compensation structure. According to Forbeck, the main factors in determining compensation are the performance of employees and NorthWestern's budgetary considerations. (Doc. 37-3 at ¶¶ 14–16). These are not mere conclusory statements. Instead, they are based on NorthWestern's internal guideposts and metrics for determining employee compensation.

### d. *Inadmissible Hearsay*

Last, Mattila argues that paragraphs 12 and 14 of Forbeck's affidavit constitutes inadmissible hearsay. Hearsay is defined as "a statement, other than one

made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Neither of these paragraphs contains statements made by an individual other than Forbeck. As discussed above, these paragraphs refer to the internal metrics that determine employee compensation at NorthWestern. Forbeck has established the requisite personal knowledge based on his position as the Director of Compensation and Benefits at NorthWestern to testify to these facts.

In conclusion, the Court will not strike any portion of Forbeck's affidavit when evaluating the merits of NorthWestern's motion for summary judgment.

///

///

///

///

///

///

///

///

///

///

///

## III.   Conclusion

IT IS HEREBY ORDERED that Mattila's motion to strike summary judgment is GRANTED in part and DENIED in part:

1. Mattila's motion to strike the affidavits of the untimely disclosed witnesses is DENIED.

2. Mattila's motion to strike paragraph 8 of Jeremy Clemens's affidavit is GRANTED

3. Mattila's motion to strike paragraphs 5, 6, 12–13, 15–17, 21–24, 27–34, 37, 39, and 41–43 of Jeremey Clemens's affidavit is DENIED.

4. Mattila's motion to strike paragraphs 9–12 and 14–16 of Chris Forbeck's affidavit is DENIED.

DATED this 8th day of April, 2025.

*Susan P. Watters*

SUSAN P. WATTERS
United States District Judge
